MOSES WEISEL, Surviving Partner, &c. v. G. W. COBB, Assignee, &c.

*Partnership—Surviving Partner—Duty and Liability of Assignee—Sale of Notes and Accounts by Assignee of Debtor—Sale of Good Notes, &c., below their Value—Interest—Commissions—Referee's Report.*

1. An assignee is chargeable with the full value of good and solvent notes and accounts sold by him at auction for much less than their value, when he might have ascertained the financial condition of the debtors.

2. Where the surviving partner of a firm conveyed the assets to an assignee to settle the estate, it was the duty of the assignee, notwithstanding a contrary custom existing in the town where the business had been conducted, to charge and collect interest on all good overdue accounts from the end of a year after dissolution of the copartnership, and is liable to the surviving partner for his failure to do so.

3. Where the assignee of a surviving partner collected about $14,000 within six months after the assignment, and large additional sums within the next six months, and within the year paid out only about $4,200 on an indebtedness of $18,000, much of which was drawing interest, and knew or might easily have ascertained who were the creditors of the partnership; *Held*, that the assignee was chargeable with interest on the moneys he kept after twelve months from the time he assumed the trust until he disbursed it.

4. The assignee of a surviving partner who was appointed to settle the estate, had ten days' public sale and four months' private sale of the stock of goods, from which he realized $13,200, and collected, without suit, notes and accounts amounting to $6,400 ; he unnecessarily and negligently delayed the payment of debts and the settlement of the estate ; *Held*, that two and one-half per cent. commissions on receipts and disbursements is enough to be allowed the assignee for his services, under the circumstances.

5. The report of a referee should not be argumentative.

CIVIL ACTION, heard before *Green, J.,* on the report of a Referee, at Fall Term, 1895, of PASQUOTANK Superior Court. Various exceptions of the plaintiff, some of which are referred to in the opinion of Associate Justice MONTGOMERY, were overruled and plaintiff appealed. The facts sufficiently appear in the opinion.

*Mr. E. F. Aydlett,* for plaintiff (appellant).
*Mr. J. H. Sawyer,* for defendant.

MONTGOMERY, J. : Upon the dissolution of the partnership composed of S. Weisel & Son, the son being Moses Weisel, the plaintiff in this action, by the death of S. Weisel, it appears that the surviving partner, the plaintiff, was told by the defendant, who knew that the plaintiff was a partner of his deceased father, that the best thing and the only thing for the plaintiff to do was to administer upon his father's estate, or get some one else to do so. The plaintiff on June 14, 1886, called upon the clerk of the superior court to qualify, as administrator of the deceased father, and offered a bond with the defendant as one of the sureties, which seems to have been intended to cover not only the individual estate of the deceased partner, but also his interest in the partnership property. The clerk declined this bond. The plaintiff then remarked to the clerk that he (plaintiff) had some interest in the firm property, and that he would open the store and

run it on his own responsibility, whereupon the clerk, according to Weisel's testimony, told him : "If you do, I will have it closed, as you have no right to open the store without first becoming an administrator." The clerk denied that he threatened to close the store in case Weisel opened it. Two days after this conversation between the clerk and the plaintiff, the defendant was appointed administrator of the deceased partner. At the time of the qualification of the defendant as administrator and just after the bond had been signed, the plaintiff being one of the sureties, the defendant took from his pocket a paper writing, remarking at the same time to the plaintiff: "Here is something else for you to sign." This document was an assignment by the plaintiff, as surviving partner, to the defendant as administrator of the deceased partner, of all of the stock of goods, all notes and accounts and choses in action, and all of the property of said firm, and to sue for and collect all notes and accounts, and to legally account for all amounts and moneys so collected and received by virtue of said assignment. The defendant then proceeded to reduce the partnership assets to cash, and to pay from this source the debts of the firm and the individual debts of the deceased partner, without discrimination.

The suit was brought by the plaintiff against the defendant for an accounting of the defendant's actions under the assignment. At the September term, 1892, of the superior court, the case was by consent referred to W. J. Griffin, and upon the coming in of the report his Honor, being of opinion that the action could not be maintained against the defendant individually, but that he must be sued as administrator and his liability adjusted according to the laws applicable to an administrator, granted defendant's motion to dismiss, from which judgment the plaintiff appealed.

The appeal was heard by this Court at February Term, 1894, and reported in 114 N. C., 22. It was decided there that the action was properly brought, could be maintained against the defendant individually, and that he must account for his trusteeship. The Court said : "If George W. Cobb, administrator, had applied those assets, as they were legally and properly applicable, all well. That will protect George W. Cobb. If either George W. Cobb, or George W. Cobb, administrator, has misapplied them, it is not well, and George W. Cobb must answer for the breach." When the case was sent back to the court below, the exceptions which had been filed to the report of the referee by the plaintiff were heard before *Judge Arm-field.* The exceptions were overruled, but his Honor remanded the report to the referee with instructions "to ascertain and state the account between the members of the late firm and Moses Weisel, and to find and report the interest of each in the business ; to ascertain and report the value of the services of the defendant assignee and what services were performed; that under the assignment described in the pleadings the defendant assignee is required to apply the assets of the firm assigned to him, first, to the payment of the debts of the firm ; second, to the cost of settling its business ; third, to account for and pay over to Moses Weisel his interest in the assets for his own use and benefit," and sustained the plaintiff's exception as to this.

The plaintiff excepted to the overruling of the exceptions. The exceptions were so numerous and many of them of so trivial a character that the plaintiff could not have anticipated a favorable ruling of the court thereon ; but some of them involving serious matters were well taken and ought to have been sustained. (1) The referee found that at the second sale of the notes and accounts of

S. Weisel & Son by the defendant at public auction, sev--
eral of them against good and solvent debtors were sold
for sums greatly below their value, and that because the
defendant was ignorant of the financial condition of the
debtors, and because the plaintiff did not inform him that
they were solvent, the defendant was chargeable only with
the sums actually collected from the sale of such notes and
accounts and not with their full value.    The plaintiff
excepted to this ruling as to matter of law.    His Honor
overruled the exception, and in that there was error.
The defendant ought to have been charged with the full
value of such notes and accounts.    (2) The defendant
failed to collect interest on the accounts due to the firm,
delaying to collect the principal even in many cases for
six, twelve and eighteen months, and the referee held that
there was a custom in Elizabeth City that open accounts
on merchants' books carried no interest.    However that
may be, the defendant was not put in charge of this estate
to continue the business of the partnership but to settle it,
and he should have charged and collected interest on all
good accounts from the end of the year 1886, the year in
which the partnership was dissolved.    This exception of
the plaintiff ought to have been sustained, and his Honor
committed error in overruling it.    (3) The defendant took
possession of the firm assets on June 16, 1886.    The names
of the creditors of the firm appeared on the firm books,
and no other debts than those were ever presented to
the defendant for payment.    The indebtedness of the
partnership amounted to about eighteen thousand dol-
lars with interest on certainly some of it, probably
all of it.    During the year 1886 the defendant col-
lected more than fourteen thousand dollars from the
sale of goods and from other sources, and paid
out during that time only about four thousand dol--

lars, not including his commissions. Up to June 15, 1887, twelve months from the time he took charge of the estate, he had not paid two hundred dollars more, though he had collected large sums in addition to the fourteen thousand dollars collected in 1886. It is a fact admitted, and so found by the referee, that all of this money was deposited in the name of George W. Cobb, administrator of S. Weisel, with the banking concern of C. Guerkin & Co., of which concern the defendant was one. The plaintiff insisted that the defendant should be charged with interest on the amounts he had on hand or in his bank after a reasonable time allowed to him for the settlement of the debts of the partnership. The referee held that he was not chargeable with interest, and that he ought to be allowed the same time to execute the trust in his hands as is allowed to administrators (two years) to settle estates. His Honor sustained the referee's ruling, and in so doing we think there was error. We are of the opinion that defendant ought to be charged, under the circumstances of this case, with the interest on whatever sums he kept after twelve months from the time when he assumed the trust, that is, on whatever amount he kept after June 15, 1887, until he disbursed it. He knew who the creditors of the firm were, and if he did not he ought to have found out by reasonable means within the twelve months after he took upon himself the trust, and should have paid to them their debts. The referee in his report allowed the defendant $1,824.85, 10% on receipts and disbursements, and also $773 to various persons, several of whom were in his own employment on salary, for clerical and other services connected with the trust, making in all $2,597.85 to execute the assignment. He had ten days of public sales and four months of private sales of the goods. From these sales he realized $13,207.46, and he collected, without suit

and at the store or at the bank from notes and accounts, $6,415.53, making a total of cash from assets of $19,632.99. The plaintiff excepted to the amount allowed the trustee as excessive. His Honor overruled the exception and we think he committed error therein. For the reasons set out in this opinion we think that $2\frac{1}{2}\%$ on receipts and disbursements is enough to be allowed the defendant for his superintending the execution of this trust. The amount paid for clerical aid is large, but we will not disturb that.

This case is remanded to the court below to the end that an order be made that the referee conform his report according to the decision of this Court as to the exceptions herein discussed and passed upon.

In this connection it may be remarked that the former reports of the referee are subject to the criticism of being too argumentative—a fault that ought to be avoided.

Modified and Remanded.

In defendant's appeal.

MONTGOMERY, J.: For reasons given in the opinion in the plaintiff's appeal,

There is No Error.

FURCHES, J. (dissenting): In 1886 a mercantile copartnership existed between the plaintiff, Moses Weisel and his father, S. Weisel, when the said S. Weisel died, leaving the plaintiff the sole surviving member of this partnership.

Upon the death of S. Weisel, the defendant, G. W. Cobb, was appointed and qualified as his administrator; and the plaintiff M. Weisel executed to the defendant Cobb, as administrator, an assignment of the partnership effects, in trust for the purpose of enabling the defendant Cobb to pay the partnership liabilities, and also the individual indebtedness of the said S. Weisel. This assign-

118—2

ment was construed by the defendant Cobb as authorizing him to use the assets of this partnership in payment of the debts and liabilities of the partnership and the individual indebtedness of S. Weisel indiscriminately. But this was afterwards held not to be the proper construction of this assignment; that it authorized the defendant to take charge of this partnership estate, to close out and settle the same, and out of the proceeds to pay off and satisfy the liabilities of the partnership and costs incident thereto; and then if there should be a surplus remaining, this should be divided between the plaintiff and the defendant as the administrator of S. Weisel. *Weisel* v. *Cobb,* 114 N. C., 22.

But before this decision of the court, *Hoke, Judge,* at at Fall Term, 1892, made the following order in the cause : " By consent the account involved in this case and all matters of fact and law are referred to W. J. Griffin, who will consider the same and make his report to the next term of this court—his findings of fact to be final—conclusions of law subject to review upon exceptions filed. Referee shall give ten days' notice of any hearing under this reference to the parties hereto." Under this order the referee proceeded to take and state the account and to report the same to Spring Term, 1893. To this report the plaintiff filed 32 exceptions, to which he afterwards added some twenty-odd more.

This report had been made upon the idea that the defendant had the right to use the proceeds of the partnership in payment of both partnership liabilities and individual indebtedness. And this made it come on before *Armfield, J.,* at Spring Term, 1894, for hearing upon the report and exceptions, when he made the following order : "On motion to remand the case, defendant having moved to confirm the report, it is adjudged, 1. That the case be

remanded to the referee, to ascertain and state the account between the members of the late firm of S. Weisel & Son, and to report the interest of each in the business, and to ascertain and report the value of the services of defendant assignee and what services were performed. 2. That under the assignment, the assignee is required to apply the assets of S. Weisel & Son assigned to him, first, to the payment of the debts of S. Weisel & Son; second, to the cost of settling the business of S. Weisel & Son; third, to account for and pay over to Moses Weisel his interest in the assets for his own use, and sustained plaintiff's exception as to this. The court ordered that the report of the referee be modified accordingly, and that the same, in all other exceptions, be overruled. Both plaintiff and defendant excepted. On plaintiff's motion he was allowed to amend his complaint so as to demand $6,000 and interest from 1886, instead of $2,000 or some other large sum."

Thus it will be seen that this report of the referee was made to ascertain and find two things only: First, the amount of partnership liabilities the defendant had paid, and the individual liability, so as to separate the two; and secondly, to ascertain the services of defendant and what said services were worth. This committal was under the *Hoke* order, in which the findings of fact were expressly agreed should be final. All the other exceptions of defendant were overruled by the *Armfield* order.

Under this order of re-submission, the referee took further evidence as to what were the partnership liabilities. And these, when ascertained, taken from the whole amount, showed the amount of individual liabilities paid.

Among the debts paid by defendant was one known as the Goldstein debt of $5,480. This was an individual debt of S. Weisel, made a year or more before the formation of the partnership of S. Weisel & Son, and was so

reported in the first report of the referee Griffin.    In that
report it was not material, as was considered, to separate
the partnership liabilities from the individual indebted-
ness.    But under the *Armfield* order it became necessary
to do so.    And the referee, upon the additional evidence
taken by him, finds *as a fact* (and we think he was justi-
fied in so finding from the evidence) that the Goldstein
debt, though an individual indebtedness, was for money
used in the store, and that it was recognized as a part of
the partnership liabilities on the 18th of August, 1885,
when the partnership was entered into and formed a part
of the $18,476.72, which the new partnership assumed and
undertook to pay; that, this being so, it became a part of
the liabilities of the partnership, although it was an indi-
vidual indebtedness.    The facts found by the referee we
have no right to review, and we sustain him in holding
that this debt constituted a part of the partnership liabili-
ties of S. Weisel & Son.

The other question that arises, under the re-submission
of *Judge Armfield*, is as to the amount of services per-
'formed by defendant and his pay therefor.    Upon this
matter the referee has taken a great deal of evidence and
has fully reported the same with his findings thereon.
There is some conflict as to the value of this service.    The
submission of such inquiry without objection is an admis-
sion that defendant was entitled to pay for this service.
And the only question to be determined is the amount the
defendant shall be allowed to retain for the same.    There
is some conflict of evidence upon this question, but the
referee finds that the great weight of the evidence sustains
the finding of five per cent. on receipts and five on dis-
bursements.    And whether there is a great preponderance
or not, it must be admitted that there is much evidence
tending to sustain this finding of fact, which we cannot

review.   The allowance of commissions to an administrator within the limits allowed by law (5%) is a matter of judicial discretion, and this Court will not undertake to review the court below unless it clearly appears there has been an abuse of this discretion.   *Walton* v. *Avery*, 2 Dev. & Bat. Eq., 405.   And we see no reason for distinguishing other trustees from the principle above enunciated.

There are some objections made as to some of the testimony received by the referee upon this question of value of services and amount of commissions (which is only a convenient method of determining the defendant's pay). But we see no grounds upon which these objections should be sustained.   It was not an *issue* either for the court or jury, but a *question* for the determination of the commissioner and the court.   And in such matters it has always been the practice of the court to obtain information from any reliable source, as if the court was going to pronounce judgment upon a defendant convicted of an offence that allowed the court a discretion within prescribed limits. The court is bound to pronounce the judgment, but as to the extent of the judgment, this is a matter of judicial discretion in the exercise of which the judge derives his information from the best sources he can, and is not bound by the strict rules of evidence necessary to be observed upon the trial of an *issue* of fact.   As this matter had been specially submitted to the referee by the order of *Judge Armfield*, he was authorized in using the means to inform himself that a judge would have been if he had undertaken the inquiry himself.   We, ought therefore, to sustain the ruling of the court as to the amount of service and commissions allowed the defendant and overrule plaintiff's exceptions.

The other exceptions insisted on by plaintiff, made to the first report, were passed upon by *Judge Armfield* and over-

ruled by him.  But as plaintiff noted his exceptions, they
were brought forward, and in this way are presented for
our consideration.  The plaintiff has over fifty exceptions.
But those yet to be considered, being those argued before
us and discussed in plaintiff's brief, may be considered in
three classes:

The sale of what is called insolvent claims, the failure
of defendant to collect interest on open accounts due the
partnership, and the failure of the referee and the court
to charge defendant with interest on the amount of money
in his hands from the time it was collected until it was
paid out.  It must be kept in mind, in the consideration of
these questions, that under this submission to the referee
every finding of *fact* by him is *final* and could not be
reviewed by the court below, and cannot be reviewed by
this Court.

Then, as to these debts and the sale of the same by
defendant: It is found as a fact that three or four of the
debts, sold by defendant as insolvent debts, were solvent,
but it is found that defendant believed them to be insolv-
ent ;  That holding them as he thought as administrator
by virtue of his appointment as such, and the assignment
of the plaintiff, he made application under the statute and
obtained an order to sell; that those sold at the first sale
were thus sold with the knowledge and assent of plaintiff,
and that plaintiff had knowledge of the second sale, and
was present at this sale ;  that said sales were fair and
open, and that defendant received no benefit therefrom.
And, though the plaintiff suggested a want of good faith
in these sales, and collusion with one Bell, who became a
purchaser of some of them, Bell positively denied this
charge, and upon the whole of the evidence the referee
finds as a *fact* that this allegation is not true, that there

was on collusion between the defendant and Bell, and that defendant acted in good faith.

If these debts had in law belonged to the estate of S. Weisel, this finding would have discharged him from any liability, except for the money he received for these claims. *Code*, sec. 1412; *Gray* v. *Armistead*, 6 Ired. Eq., 74. And the fact that he held them as the assignee of plaintiff, as surviving partner of the firm of S. Weisel & Son, as well as by virtue of his administration, will, in our opinion, make no difference. It is true that in technical law the plaintiff became the owner of the partnership effects upon the death of his father for the purpose of enabling him to close out the concern. But still the estate of S. Weisel was interested in the same to the extent of S. Weisel's stock, and a Court of Equity would have protected it from mismanagement in the hands of M. Weisel, if necessary.

But, treating it as under the assignment of Moses Weisel, and that defendant was the assignee or agent of Moses in these sales—and this is the strongest view of the matter that can be presented for the plaintiff, as it will be observed that it is he alone who sues—who complains of any wrong or injury? And he sues upon the assignment for an account and settlement of the trust estate under the assignment. This being so, the plaintiff has made defendant his trustee or agent to do what, under the law, he had the right to do. And all he can require of defendant is *good faith* and reasonable diligence and care in making the sales complained of. Mechen on Agency, sec. 495; Lewen on Trusts, p. 294, and note 1, p. 295. The commissioner has found all this—good faith, ordinary care and diligence. So these exceptions should be overruled, and the ruling of the court below sustained.

The commissioner finds as a *fact* that it was not the custom in Elizabeth City to charge interest on open accounts,

and that neither S. Weisel nor S. Weisel & Son did so.
And this being found as *a fact*, and it being found that
defendant acted in good faith, and for what he thought
to be the best interest of the concern, for the reasons
assigned for not charging the defendant with the solvent
notes sold by him, we do not charge him with this interest
which he did not collect. This exception should be over-
ruled, and the ruling of the court sustained.

The only remaining exception we think it necessary
specially to consider, is that as to whether the defendant
should be charged with interest on the money he collected
from the time it was collected until the time it was paid
out. 'We do not think he should. This money was col-
lected in different amounts—much of it in small sums for
the sale of goods. Under the statute, if he was acting as
administrator, he would not be. A large indebtedness was
to be paid *pro rata*, and the same was the case under the
assignment from the plaintiff to the defendant. It is true
that it appears that S. Weisel had a considerable individ-
ual estate, all of which would eventually have been liable
for the firm debts as well as his individual debts. But the
firm assets were first liable to the payment of the firm lia-
bilities. Within a few days over two years from the
date of the administration and the date of the assign-
ment, the defendant had sold out this large stock of goods,
collected in all the assets, and paid all the liabilities of the
partnership and individual indebtedness, and accounted
for every dollar that came into his hands. He did this
in the time the law allows, if it had been strictly an
administration. It is not shown that he made a dollar
out of the money. It is true it was deposited in a bank-
ing house in which the defendant was interested; and
it may possibly be true that something was made that
defendant was interested in, but it is not shown and we

think is rebutted by the findings of the referee, that he failed to act in good faith and for the best interest of the estate in all he did.    Such diligence, such promptness to settle, and such good faith as is found by the referee in this case, ought to count for something.    Therefore we should sustain the ruling and judgment of the court on this exception.    The other exceptions were virtually abandoned on the argument, or are covered by those we have specially considered.    I think the judgment should be

Affirmed.

FAIRCLOTH, C. J.: I concur in the dissenting opinion.